# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )           Case No.
Huawei Android (H1711) Cellular Phone, Serial )
Number GISH1711, IMEI 864885032473786 )

19MJ2335

FILED
JUN 04 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the ____Southern____ District of ____California____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952 and 960 | Importation of Controlled Substances |

The application is based on these facts:
See Affidavit of HSI Special Agent Timothy M. Gorman, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Timothy M. Gorman, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.
Date: 6/4/19

*Judge's signature*

City and state: San Diego, CA     Hon. William V. Gallo U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Timothy M. Gorman, Special Agent with Immigration and Customs Enforcement, Homeland Security Investigations, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search one Huawei Android (H1711) Cellular Phone, Serial Number GISH1711, IMEI 864885032473786, hereinafter referred to as the "**Target Device**," as described in Attachment A (incorporated herein by reference).

2. The **Target Device** was seized from Defendant Elva Maria VALDEZ-Reyes on or about March 8, 2019, when she was arrested for the importation of methamphetamine, in violation of Title 21, United States Code, Sections 952 and 960, and is currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, California 92101.

3. I seek authority to search the **Target Device** for, and to seize evidence of, federal crimes, specifically, the importation of methamphetamine in violation of Title 21, United States Code, Sections 952 and 960, as described in Attachment B (incorporated herein by reference), for the time period February 8, 2019, through March 9, 2019.

4. Based on the information below, there is probable cause to believe that the **Target Device**, described in Attachment A, contains evidence, described in Attachment B, of the aforementioned crimes.

5. The information contained in this affidavit is based upon my experience, training, and consultation with other federal law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times, and amounts are approximate.

1

## EXPERIENCE AND TRAINING

6. I am a Special Agent (SA) with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been employed by ICE/HSI since July 2007. I am currently assigned to the Special Agent in Charge (SAC), San Diego Office, Asset Identification Removal Group (AIRG). My duties with AIRG consist of supporting HSI investigations with the identification and seizure of assets associated with criminal activity, including drug trafficking organizations and the initiation of civil or criminal forfeiture action against these assets. Prior to working for HSI, I was employed with the Custom and Border Protection (CBP) United States Border Patrol (USBP), for more than ten years.

7. I have had approximately 23 weeks of intensive training at the Federal Law Enforcement Training Center, comprising of basic criminal investigator training and ICE Special Agent Training. I have received training in identifying various controlled substances and conducting Title 21 controlled substances investigations. I also am cross-designated by the United States Drug Enforcement Administration (DEA) to conduct narcotics investigations and enforce the provisions of the Controlled Substance Act.

8. In the course of my duties, I have worked as a case agent directing drug-related investigations. I also have worked as a surveillance agent and observed and recorded movements of individuals trafficking in drugs and of those suspected of trafficking in drugs. Additionally, I have participated in the execution of numerous search warrants; initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances; and interviewed defendants, witnesses, and informants regarding the illegal trafficking of controlled substances. Through these experiences, I have gained a working knowledge and insight into the operational habits of narcotics smugglers with particular emphasis on those who attempt to import narcotics into the United States from Mexico through the San Diego international ports of entry.

9. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

10. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to coordinate with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distribution amount quantities of controlled substances, such as methamphetamine. Narcotics smugglers and their organizations often use cellular telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular telephones. I also am aware that load drivers smuggling controlled substances across the border are often in telephonic contact with co-conspirators immediately prior to, during, and following the crossing of the narcotic load.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers and their co-conspirators will use cellular telephones to communicate with load drivers who transport their narcotics and/or drug

3

proceeds across the border, including to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

 e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

 f. The use of cellular telephones by drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

12. Based upon my training and experience, and consultation with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I also have learned that cellular telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned, through my training, education, that searches of cellular telephones associated with narcotics smuggling yield evidence:

 a. Tending to indicate efforts to import methamphetamine or other federally controlled substances from Mexico into the United States;

 b. Tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

 c. Tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

4

    d.    Tending to identify travel to or presence at locations involved in the importation methamphetamine or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    Tending to identify the user of, or persons with control over or access to, the subject cellular/mobile telephone; and,

    f.    Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

13. On March 8, 2019, at approximately 7:30 p.m., Defendant, a citizen of Mexico in possession of a Border Crossing Card, applied for permission to enter the United States from Mexico through the San Ysidro, California Port of Entry. Defendant was the driver, registered owner, and sole occupant of a 2002 GMC Envoy bearing Mexico license plates (the vehicle).

14. In pre-primary, a Customs and Border Protection Officer (CBPO) inspected the spare tire located under the rear side of the vehicle. The CBPO noticed that it was not fully inflated and used a buster density meter on the spare tire, which yielded higher than normal readings. The CBPO contacted a Canine Enforcement Officer (CEU), and a canine alerted to the vehicle near the rear undercarriage where the spare tire was located. The vehicle was referred to secondary inspection.

15. In secondary, the Z-Portal x-ray imaging system revealed anomalies in the spare tire, and a total of 37 packages were removed from the vehicle, including 13 packages from the spare tire and 24 packages from a non-factory compartment in the vehicle's firewall.

16. A subsequent DEA laboratory analysis of the packages confirmed that the substance was 17.2 kg of methamphetamine (actual).

17. Defendant was placed under arrest, and the **Target Device** was seized incident to Defendant's arrest. The **Target Device** was not downloaded at the Port of Entry.

18. Based upon my experience and investigation in this case, I believe that the **Target Device** contains evidence of violations of Title 21, United States Code, Sections 952 and 960, Importation of a Controlled Substance. Specifically, I believe that Defendant, as well as other persons as yet unknown, were involved in an ongoing conspiracy to import methamphetamine or other federally controlled substances into the United States. Based on my experience investigating narcotics smugglers, I also believe that Defendant may have used the **Target Device** to coordinate with co-conspirators regarding the importation and distribution of controlled substances, and to otherwise further this conspiracy both inside and outside of the United States.

19. Further, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of Defendant, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the **Target Device**.

20. Finally, I am aware that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to

6

the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Given this, I respectfully request permission to search the **Target Device** for the time period February 8, 2019, through March 9, 2019.

## **METHODOLOGY**

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and

its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## **CONCLUSION**

24. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Defendant used the **Target Device** to facilitate violations of 21 U.S.C. §§ 952 and 960. I also believe that probable cause exists to believe that evidence of that illegal activity committed by Defendant and other co-conspirators continues to exist on the **Target Device**.

25. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the item described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

SA *Timothy M. Gorman*
Timothy M. Gorman
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this ___4___ day of June, 2019.

_____
HON. WILLIAM V. GALLO
United States Magistrate Judge

8

## **ATTACHMENT A**
PROPERTY TO BE SEARCHED

The property to be searched is:

One (1) Huawei Android (H1711) Cellular Phone,
Serial Number GISH1711,
IMEI 864885032473786

Currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, California 92101.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, deleted and remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of **Target Device** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from **Target Device** will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 8, 2019, through March 9, 2019:

a. tending to indicate efforts to import methamphetamine or other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services –such as email addresses, IP addresses, and phone numbers – used to facilitate the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 21, United States Code, §§ 952 and 960.**